# DUANE FARR AND OTHERS v.
# ARMSTRONG RUBBER COMPANY AND ANOTHER.

179 N. W. (2d) 64.

July 24, 1970—Nos. 41970, 41971, 41972, 41973, 42008, 42009, 42010, 42011, 42435, 42436, 42437, 42438.

*Robert W. Barnett,* for appellant Armstrong Company.

*Meagher, Geer, Markham & Anderson, James W. Torke,* and *O. C. Adamson II,* for appellant-respondent Olson Company.

*Hvass, Weisman, King & Allen* and *Robert J. King,* for respondent Correll.

*Miller & Neary* and *John M. Miller,* for respondents Farr.

Heard before Knutson, C. J., and Nelson, William P. Murphy, Otis, and James F. Murphy, JJ.

NELSON, JUSTICE.

Plaintiffs, Duane and Ben Farr, Darrell Farr, Farr Plumbing and Heating Company, and Thomas Correll, recovered verdicts against defendants, The Armstrong Rubber Company and Elmer N. Olson Company, in these personal injury actions. In each action Armstrong appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial and Olson appeals from the judgments entered. Armstrong also appeals from judgments granting Olson indemnity, and Olson seeks review of that part of those judgments which denied it recovery of reasonable attorneys' fees.

Viewing, as we must, the evidence and all permissible inferences most favorable to the sustaining of the verdict, the jury could have found the following facts: On September 6, 1963, a single-vehicle accident occurred in the province of Alberta, Canada. The vehicle involved was a three-quarter ton pickup truck equipped with a camper loaded on the box of the truck. The truck was owned by plaintiff Farr Plumbing and Heating Company and was occupied by the four individual plaintiffs. The accident occurred when the truck, without warning, veered off the left side of the highway and overturned. All four occupants of the vehicle sustained substantial personal injuries.

The cause of the truck's leaving the highway was a blowout of the left rear truck tire, a 7.00 by 17 double-duty, lug-type tire of 8-ply rating manufactured by defendant Armstrong and sold to plaintiff Farr Plumbing and Heating Company by defendant Olson, an Armstrong tire distributor.

The two rear tires of the pickup truck were purchased following three conversations between a salesman for Olson and plaintiff Duane Farr concerning the use of the tires for a camping trip through the Canadian wilderness. The salesman assured Duane Farr that the tires would be "adequate" for the intended

purposes. Armstrong describes these tires in its advertising literature as—

"DOUBLE DUTY LUG
"Over the Road Regular Ply
\* \* \* \* \*

"The Double Duty Lug Tire—Regular Ply is ideal for contractor hauling and gravel pit operations, for use on dump trucks and concrete mixers—the type of operation that requires some off the road work, but also long hauls on the highway."

At trial, plaintiffs' experts testified that it was their opinion that the blowout was the result of a defect in the manufacture of the tire which caused a separation of the rubber coat stock or of the tread from the cords within the tire. Defendants' expert was of the opinion that the tread separation was a result of impact damage.

The case was submitted to the jury on the theories of breach of warranty, as applied to Olson only; strict liability in tort, as applied to both Olson and Armstrong; and negligent failure to warn, as applied to Armstrong only. The jury returned a general verdict against both defendants and in favor of plaintiffs in the following amounts:

| | |
|---|---|
| Thomas Correll | $65,000 |
| Benjamin Farr | 7,500 |
| Duane Farr | 4,500 |
| Darrell Farr | 12,000 |
| Farr Plumbing and Heating Company | 2,500 |

The court granted indemnity in favor of defendant Olson against defendant Armstrong with the exception that Olson's request for reasonable attorneys' fees was disallowed.

The issues presented on this appeal are (1) Was the court's definition of "defect" in its charge to the jury on strict liability in tort correct and proper? (2) Were the verdicts of the jury excessive and given under the influence of passion and prejudice? (3) Was Olson entitled to indemnity where both Olson and Armstrong were found liable to plaintiffs under a general ver-

dict? (4) Is Olson entitled to recover reasonable attorneys' fees incurred in defense of the action?

■■■■ With respect to the first issue, defendant Armstrong contends that the court's definition of "defect" in its instruction on strict liability in tort was couched in the same terms which were used in defining express or implied warranties, and, as a result, the jury was virtually compelled to return a verdict against Armstrong.

In its instructions the court first stated that the mere fact that an accident or collision has occurred does not in and of itself mean that there was a breach of warranty or that the tire involved was defective. The court then submitted an instruction on the concepts of breach of express warranty and breach of implied warranty of fitness for a particular purpose, stating that with respect to either kind of warranty, goods are required to satisfy the purpose in conformance with such warranty, and if the goods, in this case the tires, did not reasonably satisfy such purpose, there has been a breach of warranty without regard to whether or not the tires were defectively manufactured.

The court then gave the following instructions with respect to strict liability in tort:

"I will now instruct you on the law applicable to Armstrong Company as the manufacturer, and Elmer N. Olson Company, as the seller, with reference to duties to manufacture or to sell a product free of defects which render it dangerous. This law is called, 'strict liability in tort.' That is a rule or a law that is defined as follows: One who manufactures or sells any product in a *defective condition unreasonably dangerous to the user,* or to his property, is subject to liability for physical harm thereby caused to the ultimate user, or to his property, if, one, the manufacturer is engaged in the business of selling such a product, and, two, it is expected to and does reach the user without substantial change in the condition in which it was sold, insofar as the claimed defect is concerned. The rule as above stated applies although the manufacturer has exercised all possible care in the

preparation and sale of his product and the user has not bought the product from or entered into any contractual relations with the manufacturer. Before the strict liability rule can apply, the plaintiffs must prove that the defect existed when it left the possession of the defendants and was *unreasonably dangerous to the user,* or to his property.

"Now, a product is defective if it fails to perform reasonably, adequately and safely the normal, anticipated or specified use to which the manufacturer intends that it be put." (Italics supplied.)

This charge incorporates the substance of Restatement, Torts (2d) § 402 A, which provides generally that a commercial seller who sells a product in a defective condition unreasonably dangerous to the user is liable for physical harm to the user caused by the defective condition, even though the seller was not negligent and even though he was not in privity with the user. See, Greenman v. Yuba Power Products, Inc. 59 Cal. (2d) 57, 27 Cal. Rptr. 697, 377 P. (2d) 897. The rule set forth in § 402 A has been adopted as the law in Minnesota. McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488.

■ Defendant Armstrong apparently contends, not that the court's definition of "defect" was incorrect, but that it was incomplete.

A "defect" has been defined as any condition not contemplated by the user which makes the product unreasonably dangerous to him. A product is not in a defective condition when it is safe for normal handling and consumption. Magnuson v. Rupp Manufacturing, Inc. 285 Minn. 32, 171 N. W. (2d) 201; Greco v. Bucciconi Engineering Co. (W. D. Pa.) 283 F. Supp. 978; Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 826; Restatement, Torts (2d) § 402 A, comments *g, h,* and *i.*

This definition of defect, appearing in cases involving strict liability in tort, is closely related to the concept of defect as it appears in cases dealing with breach of implied warranty. As

stated in 2 Frumer and Friedman, Products Liability, § 16A[4] [e]:

"A breach of warranty may be proved if it is shown, by expert testimony or reasonable inferences from the circumstances, that a product is defective or injurious or failed in normal use and caused the injury complained of.

"Is a product which causes damage under circumstances constituting a breach of warranty 'defective' for purposes of the rule of strict liability in tort? Would the same proof suffice? While not clear-cut, affirmative answers seem to be implicit in the cases."

Thus, in Santor v. A & M Karagheusian, Inc. 44 N. J. 52, 66, 207 A. (2d) 305, 313, the court stated:

"Under the strict liability in tort doctrine, as in the case of express or implied warranty of fitness or merchantability * * * [i]f the article is defective, i. e., not reasonably fit for the ordinary purposes for which such articles are sold and used, and the defect arose out of the design or manufacture * * * and it proximately causes injury or damage to the ultimate purchaser or reasonably expected consumer, liability exists."

This concept of defect is also embodied in the Uniform Commercial Code (Minn. St. 336.2—314[2] [c]), in which "merchantable" is defined as "fit for the ordinary purpose for which such goods are used." In Pietrus v. J. R. Watkins Co. 229 Minn. 179, 38 N. W. (2d) 799, involving an injury claim arising from the use of shampoo, the court held that there was a breach of warranty that the shampoo was "suitable and fit." See, also, Gardner v. Coca-Cola Bottling Co. 267 Minn. 505, 127 N. W. (2d) 557; Henningsen v. Bloomfield Motors, Inc. 32 N. J. 358, 161 A. (2d) 69, 75 A. L. R. (2d) 1.

■ In order to establish a prima facie case of strict liability against a manufacturer, a plaintiff need merely introduce evidence that (1) he has been injured by the product; (2) the product was in a defective condition unreasonably dangerous for its

use; and (3) such defective condition existed when the product left the hands of the manufacturer. Magnuson v. Rupp Manufacturing, Inc. *supra;* Kerr v. Corning Glass Works, 284 Minn. 115, 169 N. W. (2d) 587; Prosser, *The Fall of the Citadel, supra.* Where the evidence would reasonably support a finding of these three elements, plaintiff is entitled to a jury instruction on strict liability in tort.

The trial court in the instant case clearly and categorically instructed the jury on the elements of strict liability in tort. The court also had at its disposal the following definition of "defect" appearing in the instructions of The Honorable Earl R. Larson in Larsen v. General Motors (D. C. Minn. November 1968, unreported):

"I will advise you further that a product is in a defective condition if it is not reasonably fit for the ordinary purposes for which it was sold or manufactured and expected to be used."

This court is satisfied that the instructions as a whole correctly charged the jury on the applicable rules of strict liability in tort.

■ We are aware of the confusing situation which has arisen with the evolution of the doctrine of strict liability in tort. Although it is clear that the concept reaches a defensible social result, it is unclear how the tort liability envisaged by § 402 A differs, if at all, from the tort liability flowing from a breach of implied warranty.

Some courts have found the two theories of recovery substantively the same. In Goldberg v. Kollsman Instrument Corp. 12 N. Y. (2d) 432, 437, 240 N. Y. S. (2d) 592, 595, 191 N. E. (2d) 81, 83, the court described "strict liability in tort" as "surely a more accurate phrase." In Greeno v. Clark Equipment Co. (N. D. Ind.) 237 F. Supp. 427, 431, the court stated, "This warranty imposed by law, irrespective of privity and based on public policy, is more aptly called 'strict liability,'" adding, "If the Restatement correctly states the conditions of recovery now in

practice, let those elements have a fresh name * * *." 237 F. Supp. 432.

Other courts and commentators perceive substantive differences between strict liability as defined in § 402 A and implied warranty. For example, the court in Suvada v. White Motor Co. 32 Ill. (2d) 612, 210 N. E. (2d) 182, stated that its reliance on strict tort liability made it unnecessary to decide what effect Uniform Commercial Code, § 2-318, has on an action for breach of an implied warranty. Such notions also appear in the Greenman case, where the court, after reviewing cases on breach of warranty, stated (59 Cal. [2d] 63, 27 Cal. Rptr. 701, 377 P. [2d] 901):

"Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law [citations omitted], and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations omitted] make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort."

We think the analysis offered in Restatement, Torts (2d) § 402 A, comment m, is sound. This comment suggests that the responsibility imposed in this section may be called "warranty" by the courts, but if this is done, it should be recognized that it is a different kind of warranty from those usually found in the sale of goods, and that it is not subject to the contract rules applicable to such sales. In other words, if "warranty" is used in connection with § 402 A, it must be given a new and different meaning. See, Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791, 802.

The trend in Minnesota in cases involving noncommercial settings has been to rely more heavily on strict liability in tort rather than on implied warranties. Thus, in McCormick v.

Hankscraft Co. Inc. *supra,* we said that disposing of a breach of warranty case by eliminating the requirements of notice and privity is only a transparent device to reach a desired result by eliminating bars to recovery imposed by the law of sales. We then proceeded to adopt the Restatement rule of strict liability in tort. See, also, Kerr v. Corning Glass Works, *supra,* wherein, although the complaint was based on the theory of strict liability for breach of an implied warranty, we limited our discussion to the concept embodied in § 402 A.

Applying § 402 A's concept of strict liability in tort will not result in absolute liability of the manufacturer, as Armstrong contends; nor will it supersede the Uniform Commercial Code concept of strict liability in implied warranty, as some commentators fear. See, Dickerson, *The ABC's of Products Liability— With a Close Look at Section 402A and the Code,* 36 Tenn. L. Rev. 439.

An injured plaintiff must still prove that a defect, as hereinabove defined, attributable to the manufacturer caused the damage. The substance of the manufacturer's duty remains unaffected—the implied warranty cases still dictate the quality of product he must deliver, and the extent of his liability, except in so far as limitations derived from the law of contract were applied in such cases. See, Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 804.

In other words, strict liability in tort removes from consideration contract rules when in fact no contract exists. As recognized in Greenman v. Yuba Power Products, Inc. 59 Cal. (2d) 57, 63, 27 Cal. Rptr. 697, 701, 377 P. (2d) 897, 901:

"* * * [R]ules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed."

The laws of warranty still meet the needs of commercial transactions and function well in a commercial setting. See, Seely v. White Motor Co. 63 Cal. (2d) 9, 45 Cal. Rptr. 17, 403 P. (2d) 145. However, the Restatement theory of responsibility more adequately meets the public policy need to protect consumers from the inevitable risks of bodily harm created by mass production and complex marketing conditions. McCormack v. Hankscraft Co. Inc. *supra.*

■ We find no evidence of any event or incident during the trial which might have caused any passion or prejudice on the part of the jury. In the absence of such finding, the verdicts are not so excessive as to compel a new trial on the issue of damages.

Plaintiff Thomas Correll was found to have suffered fractured vertebrae, a fractured scapula on the left, fractures of at least three ribs, punctures of both lungs with intrapulmonary hemorrhage, and a severe facial laceration which healed with a noticeable scar. He was discharged from the hospital in a body cast and was later placed in a hyperextension brace. The rib fractures and vertebrae healed with some deformity and resulted in continued pain. At the time of trial some 5 years after the accident, Dr. Wesley Burnham, an orthopedist, found on examination and X-rays that Correll had a spinal deformity resulting from the accident. His height was shortened and his posture altered. This condition is permanent and irreversible. Activities incident to Correll's employment or profession, including simple activities such as walking, carrying a briefcase, or typing, have caused, and will continue to cause, pain and discomfort. Furthermore, he will have to substantially forego almost all of the recreational activities in which he had been engaged prior to the accident.

Plaintiff Duane Farr was hospitalized with a fracture of the right scapula, a compression fracture of the eighth thoracic vertebra, and multiple bruises and contusions. At the time of trial, he was working on his farm, but he continued to have difficulty

and pain with his back which somewhat limited his work functions.

Plaintiff Benjamin Farr sustained a compound fracture of the left forearm and a partial severance of a tendon. The fracture healed in a deformed position and showed evidence of traumatic arthritis.

Plaintiff Darrell Farr was hospitalized at the time of the accident with a concussion, amnesia, a comminuted fracture of the left clavicle, facial lacerations, and multiple contusions and abrasions. As a result of the accident, he had a portion of his collarbone removed, resulting in weakness and discomfort, a $2\frac{1}{2}$-inch facial scar, and occasional loss of equilibrium resulting from the head injury.

There was ample evidence to sustain a finding by the jury that there were injuries to each plaintiff which will result in pain, discomfort, and disability in varying degrees of seriousness. The jury was fair and reasonable in its award. Thus, the court properly sustained the verdicts.

■ The third issue raised on appeal questions the trial court's award to Olson of indemnity against Armstrong for the entire amount of plaintiffs' verdicts.

At the trial, three verdict forms were submitted by which the jury could find in favor of plaintiffs. One form was against Olson alone. The court instructed the jury that this form should be used in the event it found Olson had breached an express or implied warranty. The second form provided for liability against Armstrong alone. The jury was instructed to use this verdict form if it found that Armstrong was negligent in not giving a reasonable warning as to dangers inherent or reasonably foreseeable in using the tires in the manner specified. The third verdict form provided for liability against both Armstrong and Olson. The jury was to use this verdict form if it found that defendants were strictly liable in tort. The jury ultimately returned a verdict against both defendants.

Our court has recognized a number of circumstances in which

indemnity may be granted in favor of one tortfeasor against another tortfeasor. Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843. We have also recognized, however, that indemnity is an equitable doctrine which does not lend itself to hard-and-fast rules, and that its application depends upon the particular facts of each case. Larson v. City of Minneapolis, 262 Minn. 142, 114 N. W. (2d) 68.

One of the circumstances under which a tortfeasor may recover indemnity is where he has only a derivative or vicarious liability for damage caused by the one sought to be charged. Hendrickson v. Minnesota Power & Light Co. *supra;* Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. (2d) 355, 43 A. L. R. (2d) 865, 38 Minn. L. Rev. 880. See, also, McClish v. Niagara Machine & Tool Works (S. D. Ind.) 266 F. Supp. 987. See, generally, Annotation, 28 A. L. R. (3d) 943.

In the instant case, Olson's liability is predicated on or derived from Armstrong's wrongful act. According to the court's instructions, Olson could be found liable only if it breached an express or implied warranty, or if it were strictly liable in tort. There is no evidence of an express warranty given by Olson. The only statement made by the agent of Olson is that the tires would be adequate, and this statement is nothing more than a reaffirmance of what is required under an implied warranty of merchantability, that is, fitness for the ordinary purposes for which such goods are used.

Thus, Olson was found liable either on the grounds of breach of implied warranty or of strict liability in tort.[1] In neither instance did Olson perpetrate any active wrong upon plaintiffs.

---

[1] Strict liability in tort applies not only to manufacturers but also to retailers and distributors. The same policy considerations apply, since both retailers and manufacturers are engaged in the business of distributing goods to the public. Thus, both are an integral part of the overall producing and marketing complex that should bear the cost of injuries resulting from defective products. See, Vandermark v. Ford Motor Co. 61 Cal. (2d) 256, 37 Cal. Rptr. 896, 391 P. (2d) 168.

Olson could not have found the defect with reasonable inspection, and it was not Olson's responsibility to alter the product in any way before it was sold. Thus, as was correctly pointed out in the trial court's memorandum, Olson's liability stems solely from its passive role as the retailer of a defective product furnished to it by the manufacturer, and it therefore is entitled to indemnity.

■ In cases where a party seeking indemnity has been required to defend claims arising out of another's wrongful conduct and also to defend accusations which encompass his separate wrongful acts, the court may properly disallow attorney's fees in indemnity action. Since Olson was required to defend against the breach of warranty claims, it was in the position of defending its own wrongful conduct and therefore reasonable attorneys' fees must be denied. See, O'Connell v. Jackson, 273 Minn. 91, 140 N. W. (2d) 65; Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800; Inhabitants of Westfield v. Mayo, 122 Mass. 100, 23 Am. R. 292.

The trial court did not err in denying Armstrong's motion for a new trial or for a remittitur.

The order of the trial should be and is affirmed.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.