**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2571
_____

MARSHALL INVESTMENTS CORPORATION,

APPELLANT

v.

KRONES A.G. & KRONES, INC.


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania (W.D. PA No. 2:13-cv-00118)
and 2-09-mc-00162
District Court Judge: Donetta W. Ambrose
_____

Argued:  January 21, 2014

Before: FUENTES and FISHER, *Circuit Judges*, and JONES, II, *District Judge*.[*]

(Filed:   July 10, 2014)

Jerome A. Miranowski **[ARGUED]**
FAEGRE BAKER DANIELS
Michael M. Krauss
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

        *Counsel for Appellant*

---

[*] Honorable C. Darnell Jones, II, District Judge for the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Andrew J. Wronski **[ARGUED]**
Adam E. Crawford
FOLEY & LARDNER
777 East Wisconsin Avenue
Suite 3900
Milwaukee, WI 53202

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

JONES, II, *District Judge*:

Marshall Investments Corporation appeals the final judgment of the District Court granting a motion to dismiss filed by Krones, Inc. and Krones A.G. and finding no error, we affirm the decision of the District Court.

I.

We write primarily for the benefit of the parties and thus recount only the essential facts and procedural history.

This case arises out of the complex and protracted litigation that commenced in 2006 when it was discovered that Le-Nature's, Inc., a Latrobe, Pennsylvania-based beverage company, had perpetrated a massive fraud on its investors and creditors. This revelation led to the indictment of its CEO, Greg Podlucky, and the bankruptcy of Le-Nature's itself. The expanding Le-Nature's litigation, including the instant case currently on appeal, was consolidated in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1407. The matter presently before this Court

2

concerns a dispute over attorney fees between Appellant Marshall Investments Corporation (hereinafter "Marshall") and Appellees Krones, Inc. and Krones A.G. (hereinafter "Krones").

In 2004, amid ostensibly glowing sales figures, Le-Nature's approached Krones, a leading producer of bottling and packaging equipment, with a proposal to purchase equipment for a new manufacturing plant in Phoenix, Arizona. Krones agreed to sell bottling equipment to Le-Nature's and provided a price quote of $184 million for four production lines. Le-Nature's solicited CIT Group Equipment Finance, Inc. ("CIT"), a company specializing in structured financing and leasing solutions, to help arrange financing for the equipment. In turn, CIT asked Marshall, an investment company, to help it sell loan participations in the lease.

CIT and Marshall shared responsibility for preparing and distributing lease memoranda to prospective loan participants. Before Marshall was invited to join the deal, CIT prepared a Confidential Placement Memorandum, which it distributed to potential investors in the equipment lease. Once Marshall joined the lease offering, it "oversaw assembly of a Confidential Information Memorandum." (J.A. at 110.) Marshall claims that CIT "'put the guts' into the [Confidential Information Memorandum] by gathering information and documents . . . and providing them to Marshall, which Marshall could supplement with public information, audited financials, and data obtained directly from Le-Nature's." (J.A. at 110.) Among the documents CIT provided to Marshall was a copy of the Project Management Agreement, which stated that the purchase price of the bottling equipment for the Phoenix plant was $184 million. Marshall ultimately sold loan

3

interests to Compass Financial Corporation ("Compass") and MB Financial Bank, N.A. ("MB Financial"), while CIT sold interests to Farm Credit Leasing Services Corporation ("Farm Credit"). All three companies provided substantial funding for the Phoenix project. [1]

In March 2005, a man by the name of Brian Ofria[2] contacted CIT and Marshall with information that Krones' price quote of $184 million was inaccurate. Mr. Ofria provided Marshall and CIT with a spreadsheet purporting to show that the true cost of one line of bottling equipment was $22 million instead of $46 million as quoted by Krones. Moreover, Mr. Ofria claimed that the total price for the equipment was $90 million, not $184 million. CIT and Marshall examined the documents provided by Mr. Ofria and contacted Krones about the discrepancy. After an exhaustive investigation into Mr. Ofria's allegations and repeated reassurances from Krones' executives that the cost of the project was in fact $184 million, CIT and Marshall proceeded to finance the lease. Neither of them informed Compass, MB Financial, or Farm Credit about the tip or their subsequent investigation into the allegation that Krones had inflated the price of the equipment. The lease agreement closed on April 15, 2005.

As it turned out, Le-Nature's' financial success was largely illusory. On November 1, 2006, it was forced into involuntary bankruptcy and ceased making payments on its lease. Audits revealed that Le-Nature's had lied in its financial

---

[1] The complaint does not specify whether Marshall or CIT retained any interest in the bottling equipment loan or owned any interest in the loan at the time Le-Nature's was forced into bankruptcy.

[2] The parties do not specify who Mr. Ofria is or where he obtained information concerning the lease agreement between Le-Nature's and Krones.

statements and that Krones had deceived CIT and Marshall as to the true price of the project, which turned out to be $90 million. The complaint alleges that Krones' executives knew the true price of the bottling equipment but concealed the truth from Marshall and CIT as part of a conspiracy with the CEO of Le-Nature's, Greg Podlucky.

Marshall argues that it has been caught in "an expanding web of litigation" because of the fraudulent scheme of Le-Nature's and Krones. (J.A. at 117.) In 2007, Compass sued Marshall in Alabama state court, and MB Financial sued Marshall in Illinois state court. These actions were subsequently removed to the United States District Court for the Northern District of Alabama and the Northern District of Illinois, respectively. In 2008, the Le-Nature's Liquidation Trustee, standing in the shoes of Le-Nature's, brought an action against Marshall in the Western District of Pennsylvania. Finally, Farm Credit, one of CIT's clients, sued Marshall and CIT in the Western District of Pennsylvania in 2010. These cases brought numerous claims against Krones and Le-Nature's, as well as a number of independent claims against Marshall itself for its own alleged wrongdoing. Marshall filed cross-claims for indemnity and contribution against Krones in each case. These matters were consolidated for pre-trial purposes in the United States District Court for the Western District of Pennsylvania.

Marshall also sought attorney fees from Krones by filing a complaint in the United States District Court for the Eastern District of Wisconsin on October 31, 2012, which was amended on January 17, 2013. The case was subsequently transferred to the United States District Court for the Western District of Pennsylvania on January 23, 2013. The amended complaint alleged that Krones fraudulently misrepresented the price of the

5

bottling equipment, thereby causing Marshall to incur attorney fees to defend itself from subsequent lawsuits filed against it by Compass, MB Financial, Farm Credit and the Le-Nature's Trustee. Krones filed a motion to dismiss, which the Honorable Donetta W. Ambrose granted on May 10, 2013. Marshall now appeals the judgment of the District Court.

## II.

On appeal, Marshall argues that the District Court erred in granting Krones' motion to dismiss. The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review *de novo* a District Court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

6

The essence of Marshall's complaint is that Krones misrepresented the true cost of the bottling equipment it leased to Le-Nature's and that Marshall incurred substantial attorney fees defending itself in lawsuits that arose out of Krones' fraud. More specifically, Marshall seeks attorney fees from Krones under the so-called third-party litigation exception to the American Rule.[3] As a preliminary matter, we note that Wisconsin and Minnesota both have a potential interest in seeing their laws applied to this matter because Krones' American headquarters is located in Wisconsin and Marshall is located in Minnesota. We agree with the District Court that Wisconsin and Minnesota have developed materially identical jurisprudence on the issue of the third-party litigation exception as it relates to this case, so there is no genuine conflict of law.[4]

We begin with the Restatement (Second) of Torts § 914(2), which provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time,

---

[3] The American Rule provides that litigants are responsible for their own attorney fees unless a contract or statute expressly states otherwise. *DeChant v. Monarch Life Ins. Co.*, 547 N.W.2d 592, 596 (Wis. 1996); *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998).

[4] When a case is transferred under 28 U.S.C. § 1407 for consolidated pretrial proceedings, the transferee court must "apply the same state substantive law, including choice-of-law rules, that would have been applied by a state court in the jurisdiction in which a case was filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Marshall originally brought this action in the United States District Court for the Eastern District of Wisconsin, and the matter was subsequently transferred to the United States District Court for the Western District of Pennsylvania as part of the ongoing multidistrict litigation. Therefore, we look to Wisconsin's choice-of-law rules, which provide that a conflict only arises when there is a genuine distinction between the laws of two states. *Gavers v. Federal Life Ins. Co.*, 345 N.W.2d 900, 901-02 (Wis. Ct. App. 1984) ("The threshold determination in a conflict of laws case is whether a genuine conflict exists.").

7

attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914(2) (1979).[5]

Recovery under the third-party litigation rule is the exception and is permitted only when a party is sued solely because of the tortious conduct of a third party. *Meas v. Young*, 417 N.W.2d 55, 59 (Wis. Ct. App. 1987) (limiting holding to "exceptional circumstances" of case); *O'Connell v. Jackson*, 140 N.W.2d 65, 68-69 (Minn. 1966) (restricting recovery of attorney fees to situations where party is defending conduct of another, not allegations of its own wrongdoing).

At the inception of the third-party litigation rule, the Supreme Court of Wisconsin cautioned that attorney fees should be awarded only in exceptional circumstances because of the potential for abuse. *Weinhagen v. Hayes*, 190 N.W. 1002, 1003-04 (Wis. 1922). The Court explained:

> To hold otherwise would be to open the door to oppression and extortion, to penalize persons who appeal to the courts to adjudicate their differences. It would not be in accord with sound, [sic] public policy. The temptation to institute litigation for the purpose of recovering from the opposite party generous fees would be very great and no doubt lead to great abuses.

*Id.* (citations omitted).

In *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, the Wisconsin Supreme Court expanded on *Weinhagen's* holding by refusing to grant attorney fees to a party that was sued for independent acts of alleged wrongdoing even though it was ultimately absolved

---

[5] Both Wisconsin and Minnesota follow § 914(2) of the Restatement (Second) of Torts. *O'Connell v. Jackson*, 140 N.W.2d 65, 69 (Minn. 1966) (quoting Restatement); *Meas v. Young*, 417 N.W.2d 55, 57 n.2 (Wis. Ct. App. 1987) (citing Restatement).

of liability. 816 N.W.2d 853, 874 (Wis. 2012). Several diners at a Sizzler Steak House contracted E. coli and sued Sizzler, its franchisee (E & B), a processing company (Excel), and a local distributor (Sysco) of the allegedly contaminated food under theories of negligence, strict liability, and implied warranty of merchantability and fitness. *Id.* at 858-59. All of the claims settled, but the defendants proceeded to trial to apportion liability amongst themselves. *Id.* at 859. The jury returned a verdict, finding Excel 80% liable, E & B 20% liable, and Sizzler not liable. *Id.* Sizzler brought a new claim against Excel for attorney fees on the basis that it was drawn into the litigation solely because of Excel's contaminated food. *Id.* at 872. The Court rejected Sizzler's claim, finding that Sizzler was obliged to defend itself against "potential liability for the alleged breach of a claimed duty of due care." *Id.* at 873. It concluded, "Sizzler was not an unrelated, third party, notwithstanding the jury's ultimate apportionment of fault." *Id.* at 874.

Appellant argues that *Estate of Kriefall* is distinguishable from the facts of this case because *Estate of Kriefall* involved negligence whereas Krones allegedly engaged in fraudulent conduct. A fair reading of *Estate of Kriefall*, however, demonstrates that the holding was based on two alternative grounds. To be sure, the Court found that *Weinhagen* required culpability akin to fraud or breach of fiduciary duty, but it also determined that Sizzler was barred from recovering attorney fees because it was required to defend its own conduct, regardless of the fact that it was ultimately absolved of liability. *Id.*

Minnesota law is even less amicable to Appellant's position. In *Farr v. Armstrong Rubber Co.*, the Minnesota Supreme Court denied a party's request for attorney fees,

9

even after it was indemnified by a third party, on the ground that the complaint alleged that it was a culpable party. 179 N.W.2d 64, 73 (Minn. 1970). There, three people were severely injured when their truck abruptly veered off a highway and overturned. *Id.* at 86. The plaintiffs brought suit against the manufacturer (Armstrong Rubber Company) and the retailer (Elmer N. Olson Company), arguing a defective tire had caused the accident. *Id.* The jury returned a verdict against both defendants, but the Court granted Olson indemnity on the ground that its liability was solely derivative of Armstrong's liability. *Id.* at 96. The Court noted, "Olson's liability stems solely from its passive role as the retailer of a defective product furnished to it by the manufacturer, and it therefore is entitled to indemnity." *Id.* at 97. Nonetheless, despite the ultimate apportionment of liability, the Court concluded, "[s]ince Olson was required to defend against the breach of warranty claims, it was in the position of defending its own wrongful conduct and therefore reasonable attorneys' fees must be denied." *Id.*

Appellant cites *O'Connell v. Jackson* for the proposition that attorney fees are not categorically barred in Minnesota even when a party is called to defend its own conduct. (*See* Appellant's Br. at 24-25 (citing 140 N.W.2d 65 (Minn. 1966))). According to its reading of *O'Connell*, a party may recover attorney fees whenever a third party is the primary focus of the underlying complaint, even if there are allegations of wrongdoing on the part of the party seeking fees. A full reading of the case, however, demonstrates that it does not support Appellant's position. The *O'Connell* Court recited the now familiar Restatement (Second) test and noted:

Where such attorney's fees have been disallowed, the reason is usually that the person seeking attorney's fees has been required to defend not only claims arising out of the other's breach of warranty or tortious acts, but also allegations or accusations which encompass separate and independent charges of wrongful acts on his part.

140 N.W.2d at 69.

The *O'Connell* Court's decision rested on the fact that the plaintiff was not called to defend itself from allegations of its own wrongdoing. *Id.* ("But in the instant case it seems clear that in defending the action Decker was defending only charges based upon Jackson's original breach of warranty in the described health sheets, which Decker in turn had passed on to plaintiffs.") Therefore, Appellant's reliance on *O'Connell* is misplaced.

A review of the record demonstrates that Marshall was called to defend itself against allegations of its own alleged misconduct in the lawsuits filed by Compass, MB Financial, Farm Credit and the Le-Nature's Trustee.[6] MB Financial sued Marshall for fraudulent concealment (Count II), negligent misrepresentation (Count III), civil conspiracy (Count IV), consumer fraud and deceptive business practices (Count V), and breach of contract (Count VI).[7] As for Compass, it brought claims against Marshall for fraudulent, negligent, and innocent misrepresentation (Counts I & III), fraudulent suppression and failure to disclose (Counts II & IV), breach of contract (Count V), negligence and wantonness (Count VI), and RICO violations under 18 U.S.C. § 1962(c)

---

[6] Because they are public records, the District Court could look to the complaints in these lawsuits when deciding the motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[7] These claims are drawn from MB Financial's third amended complaint.

& (d) (Counts XI & XII).[8] All of these claims arose out of Marshall's alleged concealment of or failure to disclose information that cast doubt on the true price of Krones' bottling equipment. Moreover, Compass alleged that Marshall actively participated in the fraud by procuring financing for what it knew to be overpriced equipment, thereby facilitating the deal's consummation. Therefore, Appellant's potential liability is not merely vicarious or derivative of Le-Nature's' and Krones' wrongdoing. Instead, Marshall was called to defend its own, independent actions.

The same conclusion must be drawn from the claims of Farm Credit and the Le-Nature's Trustee. Farm Credit brought several RICO claims against Marshall, alleging violations of 18 U.S.C. § 1962(c) & (d) (Counts V, VI, and VII). These claims allege that Marshall aided the principal actors in the Le-Nature's fraud by making material misrepresentations and omissions concerning the true cost of the Krones equipment. The Le-Nature's Trustee also brought several claims against Marshall, including one count of aiding and abetting fraud (Count IX) and one count of aiding and abetting a breach of fiduciary duty (Count XII). These counts allege that Marshall knew of the fraudulent scheme developed and perpetrated by Le-Nature's and either failed to disclose it or actively concealed its existence from Le-Nature's and its investors. As such, Marshall was once again called to defend its own, independent conduct against claims that it breached an independent legal duty. Therefore, Appellant may not recover attorney fees from Krones.

---

[8] These claims are drawn from Compass' second amended complaint.

Appellant alternatively argues that, even if we disagree with its interpretation of the law, the issues before us are factual questions and should be preserved until the parties have engaged in discovery. Appellant explains:

> It makes sense that courts examine the evidence before determining whether the fee-seeker was "wrongfully" involved in the underlying litigation. Only after reviewing the evidence submitted or hearing trial testimony may the court definitively determine whether a plaintiff has shown that it was wrongfully involved in the litigation.

(Reply Br. at 11.)

Appellant's argument, if followed, would effectively convert the third-party litigation exception, which requires a determination of whether Appellant was *sued* for its own misconduct, into a determination of whether Appellant was *ultimately responsible* for the alleged misconduct. As previously explained, that is not the law of Minnesota and Wisconsin. Appellee's motion to dismiss was not prematurely adjudicated by the District Court. The determination of whether a party has been sued for its own misconduct is an appropriate undertaking at the threshold of litigation and is properly conducted by looking at the face of the complaint and the docket filings in the cause of action for which a party seeks attorney fees. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (district court may rely on matters of public record in deciding motion to dismiss). Liability under the third-party litigation exception is based on allegations, not the ultimate apportionment of liability. Accordingly, we reject Appellant's contention that the District Court prematurely decided this issue.

III.

For the foregoing reasons, we affirm the District Court's decision granting Krones' motion to dismiss.