MURDOCK, Justice.
Wells Fargo Bank, N.A. ("Wells Fargo"), appeals from the Jefferson Circuit Court's denial of its claim for attorney fees against National Bank of Commerce ("NBC"). We affirm the judgment of the circuit court.
I. Facts
The claim at issue in this appeal stems from a lawsuit concerning the deposit of a check issued on June 18, 2009, by Jennifer Champion, treasurer of Jefferson County, in the amount of $178,916.42 in settlement of claims made in Winston v. Jefferson County, Case No. CV-07-2297, a class-action lawsuit concerning excess tax bids. The check was drawn on Jefferson County's account with Wachovia Bank, N.A., a predecessor to Wells Fargo, and it was jointly payable to the order of Carl Prewitt, Debra Prewitt, Renasant Bank, and Moore Oil Co., Inc. ("Moore Oil").[1]
*543 After the check was issued, it was mailed to the Prewitts at their home in Trussville, and it was received by Debra Prewitt. On June 22, 2009, the check was stamped "for deposit only," and it was deposited to an account in the name of Liberty Investing, LLC ("Liberty Investing"), at Red Mountain Bank, a predecessor to NBC, using a remote scanner that was provided by NBC's predecessor to Creative Edge Landscaping, Inc. ("Creative Edge").[2] It is undisputed that the check was deposited without endorsements and that the Prewitts were not signatories on the Liberty Investing account.
After NBC's predecessor accepted the check and credited the Liberty Investing account, it presented the check to Wells Fargo's predecessor for payment. Wells Fargo's predecessor paid the check and debited Jefferson County's account. The Prewitts received the proceeds of the check over time through a series of withdrawals and transfers from the Liberty Investing account.
In 2011, Moore Oil became aware of the check, and by a letter dated September 14, 2011, it demanded that Jefferson County pay Moore Oil the amount of the check because, Moore Oil contended, it was entitled to the proceeds of the check. Wells Fargo asserts that Jefferson County then "contacted Wells Fargo, seeking repayment" of the check. In contrast, NBC asserts that Jefferson County has not "made a demand to Wells Fargo for reimbursement of the proceeds from the check." Neither party, however, provides record support for these assertions concerning the treasurer's actions.[3]
On October 13, 2011, Wells Fargo sent a letter to NBC asserting that NBC's predecessor had breached its presentment warranty under § 7-4-208, Ala. Code 1975, by accepting the check for payment without proper endorsements and then presenting it for payment to Wells Fargo's predecessor. On October 26, 2011, NBC sent a response to Wells Fargo in which it asserted that "applicable Alabama law precludes any recovery by Wells Fargo based on a presentment warranty against NBC for any funds paid under this check."
On April 20, 2012, Moore Oil filed an action in the Jefferson Circuit Court against the Prewitts, Wells Fargo, and NBC, alleging that each of the defendants was liable for conversion of the check. On May 3, 2012, Wells Fargo sent a letter to NBC demanding that it defend and indemnify Wells Fargo in the action filed by Moore Oil. On May 9, 2012, NBC sent a response in which it declined to defend or to indemnify Wells Fargo, citing the reasons provided in its previous letter to Wells Fargo.
On May 30, 2012, Wells Fargo answered Moore Oil's complaint, denying liability for conversion of the check, and it filed cross-claims against both NBC and the Prewitts for indemnity and money had and received and cross-claims solely against NBC for breach of warranty and unjust enrichment.
On June 18, 2012, NBC answered Moore Oil's complaint, denying liability for conversion of the check, and it filed *544 cross-claims and third-party claims against Liberty Investing, Creative Edge, the Prewitts, Edward Parker, and Shea and Amanda Mitchell, including claims alleging contractual indemnity, common-law indemnity, breach of contract, breach of transfer warranty, fraud, and fraudulent suppression based on the wrongful deposit of the check in violation of NBC's predecessor's remote-deposit-account agreements.
Moore Oil subsequently amended its complaint several times to assert claims against Liberty Investing, Creative Edge, Parker, and Shea Mitchell alleging conversion and conspiracy and seeking prejudgment interest. On August 12, 2013, the circuit court granted a motion to stay the action pending this Court's ruling in First United Security Bank v. McCollum, 178 So.3d 372 (Ala. 2014). The court returned the action to its active docket by order dated October 30, 2014.
On April 29, 2015, Wells Fargo moved for a partial summary judgment against NBC. On May 22, 2015, NBC filed its response in opposition to the motion. Wells Fargo filed a reply in support of its motion on May 27, 2015.
On September 25, 2015, Moore Oil filed a motion for a partial summary judgment on its claims against NBC, Wells Fargo, Liberty Investing, Creative Edge, the Prewitts, and Shea Mitchell. Both Wells Fargo and NBC opposed the motion on the ground that Moore Oil was not entitled to the proceeds of the check.
On November 9, 2015, the circuit court issued an order in which it entered a partial summary judgment in favor of Moore Oil on its conversion claims against Wells Fargo, NBC, the Prewitts, and Shea Mitchell, stating:
"The Plaintiff's Motion for Partial Summary Judgment is granted in part. The plaintiff's claims against defendants National Bank of Commerce and Wells Fargo Bank, N.A., under Ala. Code §§ 7-3-420 and 7-3-310 [are] granted. Judgment against these defendants on this claim will be entered. Additionally, the plaintiff's motion with regard to its conversion claims against defendants Carlton Prewitt, Debra Prewitt and Shea Mitchell is granted. In all other respects, plaintiff's motion is denied."
In the same order, the circuit court granted in part Wells Fargo's motion for a summary judgment against NBC, stating:
"The Motion for Partial Summary Judgment, filed by Wells Fargo, N.A, against co-defendant National Bank of Commerce is granted in part. The court finds that NBC is legally obligated to indemnify Wells Fargo against any demand of the plaintiff herein against Wells Fargo. The court denies Wells Fargo's request for attorneys' fees."
(Emphasis added.)
According to NBC, following the circuit court's November 9, 2015, order, Moore Oil, NBC, Parker, Creative Edge, and Liberty Investing entered into a settlement agreement resolving the claims between them. Wells Fargo did not participate in the settlement.
On April 28, 2016, the circuit court entered an order in which it observed that "[b]y separate orders entered today, several defendants have been dismissed from this action." The circuit court requested that the parties inform it as to whether any other disposition was required in the case. On May 9, 2016, the circuit court entered an order dismissing all remaining claims in the action with prejudice.
Wells Fargo subsequently filed this appeal from the circuit court's November 9, 2015, order, specifically challenging the denial of its claim for attorney fees.
*545 II. Standard of Review
"Whether to award or to deny attorney fees lies within the sound discretion of the trial court. On appeal, the trial court's ruling on that question is subject to reversal only upon a showing of abuse of discretion." Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala. 1995). We note that Wells Fargo contends that our standard of review should be de novo because it bases its right to attorney fees on the interpretation of a statute. As will become apparent from our analysis, however, Wells Fargo actually relies upon the application of certain rules of special equity to sustain its claim. The question whether a rule of equity " 'will be [invoked] rests in the sound discretion of the chancellor.' " Ex parte Green, 58 So.3d 135, 156 (Ala. 2010) (Murdock, J., concurring specially in part and dissenting in part) (quoting with approval Yuba Consolidated Gold Fields v. Kilkeary, 206 F.2d 884, 889 (9th Cir. 1953) ).
III. Analysis
Wells Fargo contends that NBC should be required to reimburse Wells Fargo for the attorney fees it incurred in defending against the action brought by Moore Oil because § 7-4-208, Ala. Code 1975, gives a drawee bank a right to reimbursement of its "expenses" when a presenting bank violates the presentment warranty.[4] It argues that, in this situation, the term "expenses" must be interpreted to include attorney fees. The issue presented is one of first impression for this Court.
Section 7-4-208, Ala. Code 1975, concerns presentment warranties. It provides:
"(a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith that:
"(1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;
"(2) The draft has not been altered; and
"(3) The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.
"(b) A drawee making payment may recover from a warrantor damages for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment. In addition, the drawee is entitled to compensation for expenses and loss of interest resulting from the breach. The right of the drawee to recover damages under this subsection is not affected by any failure of the drawee to exercise ordinary care in making payment. If the drawee accepts the draft (i) breach of warranty is a defense to the obligation of the acceptor, and (ii) if the acceptor makes payment with respect to the draft, the acceptor is entitled to recover from a warrantor for breach of warranty the amounts stated in this subsection.
"(c) If a drawee asserts a claim for breach of warranty under subsection (a) based on an unauthorized indorsement *546 of the draft or an alteration of the draft, the warrantor may defend by proving that the indorsement is effective under Section 7-3-404 or 7-3-405[, Ala. Code 1975,] or the drawer is precluded under Section 7-3-406 or 7-4-406[, Ala. Code 1975,] from asserting against the drawee the unauthorized indorsement or alteration.
"(d) If (i) a dishonored draft is presented for payment to the drawer or an indorser or (ii) any other item is presented for payment to a party obliged to pay the item, and the item is paid, the person obtaining payment and a prior transferor of the item warrant to the person making payment in good faith that the warrantor is, or was, at the time the warrantor transferred the item, a person entitled to enforce the item or authorized to obtain payment on behalf of a person entitled to enforce the item. The person making payment may recover from any warrantor for breach of warranty an amount equal to the amount paid plus expenses and loss of interest resulting from the breach.
"(e) The warranties stated in subsections (a) and (d) cannot be disclaimed with respect to checks. Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the warrantor is discharged to the extent of any loss caused by the delay in giving notice of the claim.
"(f) A cause of action for breach of warranty under this section accrues when the claimant has reason to know of the breach."
(Emphasis added.)
This Court has explained that this section
"places a duty on the collecting bank [NBC] to ensure that the indorsements on a check are not forgeries, and the collecting bank is held to warrant the genuineness of the indorsements. If the collecting bank breaches this warranty, then it is liable to the drawee bank [Wells Fargo] for the amount of the check. The rationale of this section is that the first bank in the collection chain ... is in a better position to ensure that the one presenting the check has good title than are subsequent banks or the payor bank. Further, there is no duty on the drawee bank to discover an indorsement forgery in the context of payment of a check to a collecting bank."
Union Bank & Trust Co. v. Elmore Cty. Nat'l Bank, 592 So.2d 560, 562 (Ala. 1991).
The "Alabama Comment" to § 7-4-208 states: "See the Alabama Comment to Section 3-411 for the issue as to when attorney's fees are recoverable." Section 7-3-411, Ala. Code 1975, concerns the refusal to pay cashier's checks, teller's checks, and certified checks. Subsection (b) of § 7-3-411 contains language similar to subsection (b) of § 7-4-208, providing:
"(b) If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages."
(Emphasis added.)
Official Comment 2 to § 7-3-411 explains:
"2. The term 'obligated bank' refers to the issuer of the cashier's check or teller's check and the acceptor of the *547 certified check. If the obligated bank wrongfully refuses to pay, it is liable to pay for expenses and loss of interest resulting from the refusal to pay. There is no express provision for attorney's fees, but attorney's fees are not meant to be necessarily excluded. They could be granted because they fit within the language 'expenses ... resulting from the nonpayment.' In addition the bank may be liable to pay consequential damages if it has notice of the particular circumstances giving rise to the damages."
(Emphasis added.)
In contrast to the Official Comment to § 7-3-411, the Alabama Comment to § 7-3-411 states:
"Official Comment 2 states that there is no express provision for attorney's fees, but such fees are not meant to be necessarily excluded. The current rule in Alabama is that in the absence of a statute, contract or recognized equitable grounds, there is no right to recover attorney's fees from the opposing party either as cost or damages. Hartford Accident And Indemnity Company v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965) ; Mason v. City of Albertville, 276 Ala. 68, 158 So.2d 924 (1963) ; Inland Mutual Insurance Company v. Hightower, 274 Ala. 52, 145 So.2d 422 (1962) ; Cincinnati Insurance Company v. City of Talladega, 342 So.2d 331 (Ala. 1977)."
(Emphasis added.)
Wells Fargo contends that the Alabama Comment to § 7-3-411 simply explains that attorney fees are recoverable by a drawee bank "to the extent permitted under Alabama law." It further argues that Wells Fargo's situation in this case falls into two recognized equitable grounds for attorney-fee recovery under Alabama law: "(1) where a warrantor owes the warrantee indemnity and (2) 'where the natural and probable consequences of the defendant's wrongful act causes the plaintiff to become involved in litigation with a third person.' "
Wells Fargo's first ground for its claimed right to recover attorney fees is that an indemnitee is entitled to such a recovery. In Stone Building Co. v. Star Electrical Contractors, Inc., 796 So.2d 1076 (Ala. 2000), the Court provided a detailed explanation of the parameters of this equitable exception to the Alabama rule that attorney fees are not recoverable:
" 'We are aware that it appears to be well settled in other jurisdictions that an indemnitee is entitled to recover, as part of the damages, reasonable attorney fees which it is compelled to pay as a result of suits against it in reference to the matter against which it is indemnified. 42 C.J.S. Indemnity § 13(d) (1968). The indemnification of attorney fees is, however, subject to certain limitations. For instance, the allowance of attorney fees is limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity. 41 Am. Jur. 2d Indemnity § 36 (1955) ; See, e.g., United General Ins. Co. v. Crane Carrier Co., 695 P.2d 1334 (Okla. 1984) ; [ E.C.] Ernst, [Inc. v. Manhattan Constr. Co., 551 F.2d 1026 (5th Cir. 1977) ].
" 'Furthermore, there is considerable authority holding that an indemnitee is precluded from recovering attorney fees where the indemnitee has been required to defend accusations which encompass his own separate wrongful acts. See, e.g., Farr v. Armstrong Rubber Co., 288 Minn. 83, 179 N.W.2d 64 (1970) ; Piedmont Equipment Co. v. Eberhard Mfg. Co., 99 Nev. 523, 665 P.2d 256 (1983). In other words, indemnification, including attorney fees, is allowed where one is defending claims predicated solely upon another defendant's negligence; howev er, where one is defending for his own benefit, an award of attorney fees will not be allowed *548 .' "
796 So.2d at 1091-92 (quoting with approval Jack Smith Enters. v. Northside Packing Co., 569 So.2d 745, 746 (Ala. Civ. App. 1990) ) (emphasis added).
Wells Fargo argues that, because the circuit court concluded that it was entitled to indemnity from NBC, it follows that Wells Fargo is also entitled to attorney fees from NBC for defending the claim Moore Oil brought against Wells Fargo. It concedes that "no Alabama court has expressly ruled in applying an indemnity theory to breach of presentment warranties," but it cites cases from other jurisdictions that have applied the exception to such situations. See, e.g., Perkins State Bank v. Connolly, 632 F.2d 1306, 1316 (5th Cir. 1980) ; Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 491 F.2d 192, 198 n.9 (8th Cir. 1974) ; and First Virginia Bank-Colonial v. Provident State Bank, 582 F.Supp. 850, 852 (D. Md. 1984).
Wells Fargo also contends it is entitled to recover attorney fees because it has been recognized that
"where the natural and proximate consequences of the defendant's wrongful act cause[ ] the plaintiff to become involved in litigation with a third person, attorneys' fees and other expenses incurred in such litigation may be recovered as damages. 22 Am. Jur. 2d, Damages, § 166, p. 235 ; 25 C.J.S. Damages § 50, p. 787.
"In order to recover attorneys' fees against a defendant in a tort suit, the following elements are necessary:
"(1) The plaintiff must have incurred attorneys' fees in the prosecution or defense of a prior action.
"(2) The litigation must have been against a third party and not against the defendant in the present action.
"(3) The plaintiff must have become involved in such litigation because of some tortious act of the defendant. 45 A.L.R.2d 1183."
Highlands Underwriters Ins. Co. v. Elegant´e Inns, Inc., 361 So.2d 1060, 1066 (Ala. 1978).
Wells Fargo argues that it meets the requirements of this principle of recovery. It says that the only reason it became embroiled in the action brought by Moore Oil was that NBC refused "to pay the funds necessary to satisfy the claim made by Moore Oil in October 2011" when Wells Fargo asked NBC to do so. The litigation for which Wells Fargo seeks compensation was brought by a third party, i.e., Moore Oil. Wells Fargo also notes that it has been observed that the "prior-action" requirement is met where the two actions are part of the same underlying case. See Wood v. Old Sec. Life Ins. Co., 643 F.2d 1209, 1218 (5th Cir. 1981) (observing that in Highlands Underwriters an action for reformation of the insurance policy and an action against the insurance agent alleging negligent endorsement of the same insurance policy were consolidated for trial).
Before we specifically examine whether the equitable exceptions to Alabama's general rule under which Wells Fargo seeks to travel are applicable, we must note a threshold difficulty with Wells Fargo's argument as a whole. Wells Fargo claims an unequivocal right to attorney fees based on a statute that simply is not explicit about such a right. The only language in § 7-4-208 that speaks to this issue in any respect states: "In addition, the drawee is entitled to compensation for expenses and loss of interest resulting from the breach." § 7-4-208(b). In other words, § 7-4-208 contains no express provision for the recovery of attorney fees. The right to such a recovery is left to *549 implication based on interpretation of comments to Uniform Commercial Code provisions. As this Court has observed: " 'Though the official comments are a valuable aid in construction, they have not been enacted by the legislature and are not necessarily representative of legislative intent.' " Pinigis v. Regions Bank, 977 So.2d 446, 455 (Ala. 2007) (quoting Simmons v. Clemco Indus., 368 So.2d 509, 514 (Ala. 1979) ).
In contrast, as NBC observes, Alabama's version of the Uniform Commercial Code contains several sections that do expressly provide for an award of attorney fees. See Ala. Code 1975, § 7-4A-305(e) (providing for recovery of "reasonable attorney's fees" upon failure to execute payment order); § 7-5-111(e) (noting that "reasonable attorney's fees and other expenses of litigation may be awarded" under Article 5 dealing with letters of credit); § 7-9A-607(d) (stating that a secured party may deduct from the collections reasonable expenses "including reasonable attorney's fees and legal expenses"); § 7-7-601(a) (stating the court may order payment of bailee's "reasonable costs and attorney's fees"); § 7-4A-404(b) (noting that "reasonable attorney's fees" are recoverable if demand for interest is made and refused); and § 7-4A-211(f) (authorizing award of "reasonable attorney's fees" upon cancellation of payment order).
It is axiomatic that the best evidence of legislative intent is the language of a statute itself. The legislature expressly provided for the recovery of attorney fees in several provisions of Alabama's version of the Uniform Commercial Code, but it did not do so in § 7-4-208. Instead, Wells Fargo asks us to infer such a right based upon inconclusive statutory language and comments upon that language that restate Alabama's general rule that attorney fees are not recoverable.
As to the commentary on the statute, Wells Fargo offers the only possible construction favorable to its position. But, although is true that, if the Alabama Comment to § 4-3-411 is read in isolation, it could be interpreted to be stating that attorney fees are recoverable where Alabama law allows for such recovery, reading the commentary to § 4-3-411 as a whole puts the Alabama Comment in a different light. The Official Comment to § 4-3-411 opens the door to allowing attorney fees under the auspices of the term "expenses"; the Alabama Comment follows that observation with a terse statement of Alabama law on the subject. The result is that the Alabama Comment comes across as pushing back against the position in the Official Comment through its emphasis on this State's adherence to the traditional American Rule concerning attorney fees.
Beyond all of this, Wells Fargo's situation does not qualify for the equitable exceptions it seeks to invoke. With regard to the rule expressed in Stone Building Co. concerning indemnitees being entitled to recovery of attorney fees, Wells Fargo left out of its iteration of the rule the caveat that " 'an indemnitee is precluded from recovering attorney fees where the indemnitee has been required to defend accusations which encompass his own separate wrongful acts.' " Stone Bldg. Co., 796 So.2d at 1092 (quoting Jack Smith Enters., 569 So.2d at 746 ). Moore Oil brought claims asserting conversion against both NBC and Wells Fargo. Specifically with regard to Wells Fargo, Moore Oil alleged that "Wells Fargo made payment on the Check without Moore's consent or indorsement" and that "Wells Fargo is liable to Moore for conversion of the Check." Wells Fargo had to defend itself in the Moore Oil action because of its own allegedly wrongful conduct. In fact, the circuit court ruled in Moore Oil's favor with regard to its claim *550 against Wells Fargo. Wells Fargo protests that this should not matter because the circuit court concluded that NBC had to indemnify Wells Fargo, but where the circuit court ultimately placed financial liability in the action does not change the fact that Wells Fargo was not " 'defending claims predicated solely upon [NBC's] negligence.' " Stone Bldg. Co., 796 So.2d at 1092 (quoting Jack Smith Enters., 569 So.2d at 746 ). Accordingly, this equitable exception does not apply here.
A similar difficulty prevents application of the equitable rule expressed in Highlands Underwriters concerning instances "where the natural and proximate consequences of the defendant's wrongful act cause[ ] the plaintiff to become involved in litigation with a third person." Highlands Underwriters, 361 So.2d at 1066. For that rule to apply, "[t]he plaintiff must have become involved in such litigation because of some tortious act of the defendant." Id. It is true that NBC failed to ensure that the check was properly endorsed before it accepted the check, an act that was integral in the chain of events that led to conversion of the check. But Moore Oil filed a separate conversion claim against Wells Fargo because Wells Fargo simply relied upon NBC's presentation of the check, and it paid the check without making any inquiry about whether it was properly endorsed. Wells Fargo would not have become involved in Moore Oil's suit apart from its own actions. Accordingly, the equitable rule expressed in Highlands Underwriters also is not applicable here.
In sum, Wells Fargo's claim for reimbursement of attorney fees expended in defense of the claim brought by Moore Oil lacks support in the statutory scheme and in the comments on the statute at issue. Furthermore, neither of the "special equity" rules under which Wells Fargo claims entitlement to reimbursement of its attorney fees is applicable in this situation. Therefore, we cannot say that the circuit court erred in denying Wells Fargo's claim for reimbursement of its attorney fees.
IV. Conclusion
Based on the foregoing, we conclude that the circuit court's judgment denying Wells Fargo's claim for attorney fees is due to be affirmed.
AFFIRMED.
Stuart, C.J., and Bolin, Main, and Bryan, JJ., concur.

The property involved in the excess tax bid was originally owned by the Prewitts, who financed the purchase through a note and mortgage from Renasant Bank. Moore Oil purchased the note and mortgage in 2007.

A remote-deposit agreement existed between NBC's predecessor and Creative Edge. Liberty Investing and Creative Edge were owned by the same person, Edward Parker. Apparently the Prewitts' son-in-law, Shea Mitchell, was an employee for one of Parker's businesses.

In its reply in support of its motion for a summary judgment, Wells Fargo stated that "[t]he Jefferson County Treasurer is not asserting any claim against Wells Fargo."

Wells Fargo concedes that NBC is not responsible for attorney fees Wells Fargo expended in pursuit of its indemnity claim against NBC and claims against other parties in the action.